UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:                                                                              Chapter 7

Margaret M Liu,                                                             Case No. 19-42127-nhl

                Debtor.
-----------------------------------------------------------X
Shau Chung Hu,

                Plaintiff,

v.                                                                                       Adv. Pro. No. 19-1098-nhl

Margaret M Liu,

                Defendant.
-----------------------------------------------------------X

## DECISION

APPEARANCES:

| | |
|---|---|
| David H. Pikus, Esq. | Oliver Zhou, Esq. |
| Bressler Amery & Ross PC | Law Offices of Oliver Zhou |
| 17 State Street | 749 61st Street, Suite 501 |
| New York, NY 10004 | Brooklyn, NY 11220 |
| Attorney for Plaintiff | Attorney for Defendant |

NANCY HERSHEY LORD
United States Bankruptcy Judge

This matter comes before the Court on the motion of the plaintiff, Shau Chung Hu (the "Plaintiff"), for summary judgment against Margaret M. Liu (the "Defendant) excepting the debt owed to the Plaintiff from the Defendant's discharge pursuant to 11 U.S.C. § 523(a)(2), (a)(4) and (a)(6).[1] The Defendant opposes the motion. For the following reasons, the Plaintiff's motion for summary judgment is granted to the extent that the debt is excepted from discharge pursuant to § 523(a)(4).

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

Unless otherwise noted, the following facts are undisputed, deemed admitted pursuant to E.D.N.Y. Local Bankruptcy Rule 7056-1, or are matters of which judicial notice may be taken.[2]

The Plaintiff and the Defendant were married in 1985 and have been separated since 1995. (Pl.'s Stmt. of Undisputed Facts ¶ 1, ECF No. 48-20; Hu Aff. ¶ 2, ECF No. 48-1; Def.'s

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, Title 11, U.S.C.
[2] Local Bankruptcy Rule 7056-1(c), provides, in pertinent part:
> A motion for summary judgment pursuant to Bankruptcy Rule 7056 shall include a separate statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may be grounds for denial of the motion. The opposition to a motion for summary judgment shall include a separate statement of the material facts as to which it is contended that there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted by the opposing party unless controverted by the statement required to be served by the opposing party.

E.D.N.Y. LBR 7056-1(c).

Stmt. of Material Facts ¶ 9, ECF No. 55-1.)³ The parties co-owned an interest in Lowbet Realty Corp. ("Lowbet"), which, in turn, owned commercial real property located at 973 44th St., Brooklyn, NY (the "Property"). (Pl.'s Stmt. of Undisputed Facts ¶ 2, 3, ECF No. 48-20.)

In 2006, the Defendant initiated a divorce proceeding against the Plaintiff, which was ultimately dismissed on July 21, 2011, based upon the Defendant's failure to appear for trial. (Pl.'s Stmt. of Undisputed Facts ¶¶ 5,6, ECF No. 48-20; Hu Decl. Exs. 2 and 3, ECF No. 48-3, 48-4.)

On October 5, 2011, after the dismissal of the Defendant's divorce action, the Plaintiff commenced a special proceeding (the "State Court Action") in the New York State Supreme Court, Kings County (the "State Court"), under the New York Business Corporations Law to dissolve Lowbet and to liquidate and distribute its assets, i.e., the Property. (Pl.'s Stmt. of Undisputed Facts ¶ 7, ECF No. 48-20; Hu Decl. ¶¶ 5, 6, Exs. 4 and 5, ECF Nos. 48-1, 48-5, 48-6.) The Plaintiff also sought (1) a determination that he is 75% owner of Lowbet; (2) the appointment of a receiver to sell the Property; and (3) the distribution of the sale proceeds according to their ownership interests, subject to a credit to him for monies that the Debtor dissipated from Lowbet. Id.

On October 5, 2011, the State Court issued a temporary restraining order (the "TRO"), which provided, in pertinent part:

> ORDERED that pending the hearing of the motion, the status quo shall be maintained in that the management company currently managing the property shall continue to do so, unless otherwise directed by a justice of this court . . . . neither party shall, therefore, participate in the management of the realty or remove assets of the corporation without further direction by a justice of this Court.

---

³ Citations to "ECF No. []" are to documents filed in Adv. Pro. No. 19-01098-NHL, identified by docket entry number.

(Pl.'s Stmt. of Undisputed Facts ¶ 8, ECF No. 48-20; Hu Decl. ¶¶ 5, 6, Exs. 4 and 5, ECF Nos. 48-1, 48-5, 48-6.)

On October 27, 2011, after issuance of the restraining order, the Defendant, on behalf of Lowbet, entered into a contract to sell the Property to a third party, 973 44th Street Realty LLC (the "Buyer"), without the Plaintiff's knowledge or consent and without authorization from the State Court. (Pl.'s Stmt. of Undisputed Facts ¶ 9, ECF No. 48-20; Hu Decl. ¶9, Ex. 10, ECF Nos. 48-1, 48-11.) The sale closed on or about February 22, 2012, without the Plaintiff's knowledge. (Pl.'s Stmt. of Undisputed Facts ¶ 10, ECF No. 48-20; Hu Decl. ¶ 10, Ex. 11, ECF Nos. 48-1, 48-12.) The Plaintiff alleges that, after payment of the mortgage and closing costs, the Defendant fled to Taiwan with over $1 million in net sale proceeds, and that the Plaintiff received nothing from the sale. (Hu Decl. ¶ 17, ECF Nos. 48-1.)

On April 10, 2012, prior to the Plaintiff's discovery of the sale, a hearing in the State Court Action was held, at which the Plaintiff, the Plaintiff's counsel, and the Defendant's counsel appeared. (Hu Decl. ¶ 12, Ex. 12, ECF Nos. 48-1, 48-13.) At that hearing, the State Court, after inferring that the Defendant was "deliberately defaulting" by failing to appear at that hearing, struck the Defendant's answer in the State Court Action. (Hu Decl. ¶ 12, Ex. 12 at p. 4, 6, 22, ECF Nos. 48-1, 48-13.) The State Court also found that Lowbet was dissolved by operation of law and, after hearing testimony and receiving documentary evidence, the State Court determined that the Plaintiff owned 75% of Lowbet and concluded that a receiver be appointed to liquidate the Property. (Hu Decl. ¶ 13, Ex. 12 at 6, 28, 38, 39, ECF Nos. 48-1, 48-13.) Consistent with the record of that hearing, the State Court issued a Decision and Order on May 6, 2014, granting the Plaintiff a default judgment against the Defendant and declaring that

the Plaintiff owns 75% of Lowbet and that the Defendant owns 25% of Lowbet.  (Hu Decl ¶ 13, Ex. 13, ECF No. 48-48-1, 48-14.)

On April 23, 2012, after discovering that the Property had been sold, the Plaintiff moved in State Court to hold the Debtor in contempt for selling the Property in violation of the TRO. (Hu Decl. ¶ 14, ECF No. 48-1.)  On April 30, 2012, the State Court held the debtor in civil and criminal contempt for selling the property in violation of the TRO and issued a Warrant of Arrest for Contempt. (Hu Decl. ¶ 14, Exs. 14, ECF Nos. 48-1, 48-15.)    The Plaintiff alleges that the Defendant has evaded arrest by living in Taiwan.   (Hu Decl. ¶ 16, ECF No. 48-1.)

In February 2013, the Plaintiff filed an amended petition in the State Court Action seeking relief related to the unauthorized sale of the Property, including, among other things, (1) rescission of the sale; (2) damages, including punitive damages, against the Defendant based upon her fraudulent conveyance of the Property, conversion of the sale proceeds, and breach of fiduciary duty to the Plaintiff as shareholder of Lowbet; (3) damages against the Defendant for unjust enrichment; (4) the sale of the Property by the receiver; and (5) the continuation of the TRO and for an injunction against the Defendant from accessing, using, or drawing from Lowbet's revenues and bank account, and from transacting business on Lowbet's behalf; (6) distribution of the sale proceeds in accordance with the State Court's determination that the Plaintiff owns 75% of Lowbet, subject to a credit to Plaintiff for monies dissipated from Lowbet by the Defendant; and (7) another injunction directing the Defendant to immediately provide the Plaintiff with access to Lowbet's books and records.  (Hu Decl. ¶ 15, Ex. 5; ECF Nos. 48-1, 48-6.)[4]

On December 10, 2018, the State Court entered a money judgment in the Plaintiff's favor against the Defendant "on all claims asserted against her" in the State Court Action in the

---

[4] Paragraph 15 of the Plaintiff's declaration identifies the amended petition as Ex 4, but it is Ex. 5.

amount of $1,480,636.50, through November 6, 2018, with per diem interest of $227.66 through entry of judgment, and post-judgment interest from the date of entry (the "State Court Judgment"). (Hu Decl. ¶ 18; ECF No. 48-1; Compl., Ex. D, ECF No. 1-4.) The Defendant's motion in State Court to vacate the State Court Judgment was denied on the basis that she "failed to set forth a reasonable excuse for defaulting in the action following her appearance in the action". (Hu Decl. ¶ 18, Ex. 16; ECF Nos. 48-1, 48-17.) The Defendant is appealing that denial with the Supreme Court of New York, Appellate Division, Second Department. (Hu Decl. ¶ 19, ECF Nos. 48-1.)

On April 10, 2019, the date that the Plaintiff was scheduled to foreclose against two of the Defendant's properties to satisfy the State Court Judgment, the Defendant filed a voluntary petition under chapter 7 of the Bankruptcy Code, commencing Case No. 19-42127-NHL. (Petition, Case No. 19-42127-NHL ECF No. 1; Hu Decl. ¶ 20, ECF No. 48-1.) The chapter 7 trustee administered the estate and liquidated non-exempt property. The Plaintiff received a distribution of $652,438.50 from the chapter 7 estate and asserts that he is still owed $1,099,635.00 under the State Court Judgment, not including interest. (Hu Decl. ¶¶ 20, 21, ECF No. 48-1.)

On July 19, 2019, the Plaintiff timely commenced this adversary proceeding to declare the debt arising from the State Court Judgment nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (a)(4), and (a)(6). The Defendant failed to timely answer or otherwise respond to the complaint and the Defendant's default was noted by the Court at a pre-trial conference held on October 16, 2019. However, on November 4, 2019, the Defendant filed an answer to the complaint. (ECF No. 6.) Thereafter, the parties engaged in mediation with respect to the claims

5

asserted in this adversary proceeding and other pending disputes between them, but the attempt was unsuccessful. (ECF No. 44.)

A pre-trial conference was held on January 12, 2023, at which David H. Pikus, Esq. appeared for the Plaintiff, and Oliver Zhou, Esq. appeared for the Defendant. At that conference, the Court directed that any motion for summary judgment be filed so as to be returnable on April 20, 2023. The Court recited that, pursuant to the E.D.N.Y. Local Bankruptcy Rules, the motion papers must be filed and served at least fourteen days prior to the hearing, plus an additional three days' notice for mailing, and that opposition is due seven days prior to the hearing.[5]

On March 16, 2023, the Plaintiff timely filed the instant motion for summary judgment, which was returnable on April 20, 2023. (ECF Nos. 48, 51.) On April 18, 2023, two days before the hearing on the instant motion, the Defendant filed a cross motion for summary judgment, also returnable April 20, 2023, which was combined with opposition to the Plaintiff's motion.[6] On April 20, 2023, the Plaintiff filed a response to the Defendant's cross motion, asserting, among other things, that the Defendant's papers were untimely, and that the Defendant did not "include a separate statement of the material facts as to which it is contended that there exists a genuine issue to be tried" as required by Rule 7056-1 of the Local Bankruptcy Rules for this District.

On April 20, 2023, the Court heard oral argument on the Plaintiff's motion for summary judgment, and adjourned the hearing to May 5, 2023 for further argument. The Court authorized the Plaintiff to submit additional opposition to the Defendant's late-filed summary judgment

---

[5] Rule 9006-1 of the Local Bankruptcy Rules for the Eastern District of New York requires that, unless otherwise provided by those rules or the Federal Rules of Bankruptcy Procedure, all motion papers shall be served at least 14 days prior to the hearing date and all opposition papers shall be served so as to be received at least 7 days before the hearing date.
[6] The Defendant's combined cross motion and opposition did not comply with the notice provisions required by Rule 9006-1 of the Local Bankruptcy Rules for the Eastern District of New York.

motion and denied the Defendant's request to file additional papers with respect to the Plaintiff's timely filed motion.

Notwithstanding that directive, on May 1, 2023, the Defendant filed a document entitled "Reply to Response of Plaintiff in Support of Cross Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment," together with a memorandum of law and a statement of material facts. (ECF No. 55.) The Court heard continued oral argument on the Plaintiff's motion for summary judgment on May 4, 2023, and reserved decision. Thereafter, on July 25, 2023, the Defendant filed a supplemental memorandum of law. (ECF No. 65.)

STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56, made applicable to this proceeding by Bankruptcy Rule 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). A court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Kulak v. City of New York, 88 F.3d 63, 70 (2d Cir. 1996) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)). In ruling on a motion for summary judgment, a court looks to "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," Celotex, 477 U.S. at 322 (quoting Fed. R. Civ. P. 56(c)), and reviews the evidence in the light most favorable to the non-moving party, with all inferences drawn in that party's favor, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002).

While the initial burden is on the movant to demonstrate the absence of a genuine dispute of material fact with particular citations to the record, Celotex, 477 U.S. at 323; Marvel, 310 F.3d at 286, the non-moving party cannot defeat summary judgment by merely casting doubt on some of these facts, see Kulak, 88 F.3d at 71.  Rather, the non-moving party must point to disputed facts that would affect the outcome of the case such that a reasonable trier of fact could find in favor of that party.  Anderson, 477 U.S. at 247–48.

## DISCUSSION

"A primary 'objective of the bankruptcy law is to afford a deserving debtor an economic rehabilitation or "fresh start" in life.'"  Suparo Int'l Inc. v. Kedia (In re Kedia), 607 B.R. 101, 108 (Bankr. E.D.N.Y. 2019) (quoting First Am. Bank of N.Y. v. Bodenstein (In re Bodenstein), 168 B.R. 23, 27 (Bankr. E.D.N.Y. 1994)).  However, this objective is "tempered by an equally important objective and that is to prevent the 'dishonest debtor's attempt to use the law's protection to shield his or her wrongdoing.'"  Id. (quoting Bodenstein, 168 B.R. at 27).

The Plaintiff argues that he is entitled to summary judgment under the doctrine of collateral estoppel because the State Court Judgment, and the record upon which it is based, satisfy the elements of § 523(a)(2), (a)(4), and (a)(6). The Defendant contends that the State Court Judgment is not entitled to collateral estoppel because it was entered on default.  The Defendant further contends that the State Court Judgment does not satisfy the requirements of § 523.

I. Collateral Estoppel

A threshold question is whether the State Court Judgment may be given collateral estoppel effect.  If preclusive effect cannot attach, summary judgment must be denied. The Plaintiff asserts that a judgment entered on default is entitled to preclusive effect.  The Plaintiff

further contends that, in any event, the State Court Judgment was not entered on default in the traditional sense, but rather that the Defendant's answer was stricken for failing to appear, and that Defendant's counsel appeared and litigated in the State Court Action.

It is well-settled that a prior adjudication may have preclusive effect in a subsequent dischargeability proceeding if the elements of the claim(s) in the prior proceeding are identical to the elements of § 523(a).  Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991); Evans v. Ottimo, 469 F.3d 278, 281 (2d Cir. 2006).  Further, a bankruptcy court is required to give a state court default judgment the same preclusive effect as would be given by that state's courts.  Kelleran v. Andrijevic, 825 F.2d 692, 694 (2d Cir. 1987).

"Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action."  Evans, 469 F.3d at 281.  "Generally, under New York law, 'collateral estoppel effect will only be given to matters actually litigated and determined in a prior action . . . .'"  Id. at 282 (quoting Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 456 (1985)).  "[F]or a question to have been actually litigated . . . it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding."  Id. (quoting D'Arata v. N.Y. Cent. Mut. Fire Ins. Co., 76 N.Y.2d 659, 667 (1990)).  "The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues . . . whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue."  Evans, 469 F.3d at 281–82 (quoting Kaufman, 65 N.Y.2d at 456)).

Collateral estoppel "is a doctrine intended to reduce litigation and conserve the resources of the court and litigants and it is based upon the general notion that it is not fair to permit a party to relitigate an issue that has already been decided against it." Kaufman, 65 N.Y.2d at 455. "In assessing these requirements, however, a court must be mindful that '[d]espite the economies achieved by use of collateral estoppel, it is not to be mechanically applied, for it is capable of producing extraordinarily harsh and unfair results.'" Claridge Assocs., LLC v. Schepis, No. 15 CIV. 4514 (KPF), 2020 WL 6505210, at *6 (S.D.N.Y. Nov. 5, 2020) (alteration in original) (quoting Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V., 68 F.3d 1478, 1486 (2d Cir. 1995)).

New York law does not automatically exclude a default judgment from the application of collateral estoppel. See Evans, 469 F.3d at 282.[7] See also Parklex Assocs. v. Deutsch (In re Deutsch), 575 B.R. 590, 597–98 (Bankr. S.D.NY. 2017); Wu v. Lin (In re Lin), 576 B.R. 32, 49 (Bankr. E.D.N.Y. 2017) ("New York's collateral estoppel rule also accords preclusive effect to default judgments, under the appropriate circumstances.").

In her supplemental memorandum of law, the Defendant argues that collateral estoppel does not attach to the State Court Judgment because she was not served with the state court "hearing" and, as such, "she was not afforded the opportunity to contest [P]laintiff's allegation of fraud." (Def.'s Suppl. Mem. of Law at 6-7, ECF No. 65.) This argument must be rejected on procedural grounds because the Defendant did not timely raise this objection to the Plaintiff's motion and was not granted permission to file supplemental papers.

---

[7] "Not all courts agree that the Second Circuit properly stated New York's application of issue preclusion arising from a default judgment." Curtis v. Ferrandina (In re Ferrandina), 533 B.R. 11, 24 n.14 (Bankr. E.D.N.Y. 2015) (citing Vyshedsky v. Soliman (In re Soliman), 515 B.R. 179, 185 (Bankr. S.D.N.Y. 2014)). However, Evans is binding on this Court on matters of New York law. Id.

More importantly, even if considered, the argument fails on the merits.  The record of the State Court Action annexed to the pleadings in this adversary proceeding and to the Plaintiff's motion reflects that the Defendant filed an answer in the State Court Action, was represented by counsel at the April 10, 2012 hearing in the State Court, and that the answer was stricken based upon the Defendant's deliberate default, all of which belie the Defendant's assertion that she lacked notice of the State Court Action or was denied the opportunity to fairly and fully litigate the issues therein.  Moreover, the State Court's Warrant of Arrest for Contempt recites that the Defendant was "given actual notice including at the address of service that was confirmed by [Defendant's] counsel as [Defendant's] address" (Hu Decl. Ex. 9, ECF No. 48-10), and the State Court Judgment recites that the Defendant was "duly served" with the Plaintiff's motion for an order granting a judgment (Compl., Ex. D, ECF No. 1-4).

This Court concludes that the State Court's Warrant of Arrest for Contempt and the State Court Judgment are entitled to collateral estoppel effect under New York law.  First, as discussed above, New York law applies collateral estoppel to default judgments, and second, the State Court Judgment was not the standard default judgment entered after a defendant simply failed to answer or appear.  Rather, the record reflects that the Defendant's answer was stricken after she "deliberately default[ed]" and failed to appear at the April 10, 2012 hearing as directed by the State Court.  (Hu Decl. ¶ 12, Ex. 12 at p. 4, 6, 22, ECF Nos. 48-1, 48-13.)  The evidentiary hearing on April 10, 2012 continued in the Defendant's absence, but her counsel was present and was afforded the opportunity to question witnesses.  As such, the State Court Action was actually litigated, and the State Court's orders and State Court Judgment are entitled to collateral estoppel with respect to all matters necessarily determined therein.

II. 11 U.S.C. § 523(a)(4)

Section 523(a)(4) provides that a discharge under § 727 does not discharge an individual debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The Plaintiff asserts that the State Court Judgment satisfies the separate bases under § 523(a)(4). The Defendant argues that the State Court Judgment is insufficient to establish nondischargeability under § 523(a)(4).

"A finding of nondischargeability for defalcation by a fiduciary requires a showing of '(i) the existence of a fiduciary relationship between the debtor and the objecting creditor, and (ii) a defalcation committed by the debtor in the course of that relationship.'" Mirarchi v. Nofer (In re Nofer), 514 B.R. 346, 353 (Bankr. E.D.N.Y. 2014) (quoting Grow Up Japan, Inc. v. Yoshida (In re Yoshida), 435 B.R. 102, 108 (Bankr. E.D.N.Y. 2010)). "The question of whether a defalcation has occurred is reached only when the threshold determination that the debtor acted in a fiduciary capacity has been made." Id. (quoting Andy Warhol Found. v. Hayes (In re Hayes), 183 F.3d 162, 170 (2d Cir. 1999)).

The Bankruptcy Code does not define "fiduciary." Nofer, 514 B.R. at 353 (first citing Hayes, 183 F.3d at 167; then citing Yoshida, 435 B.R. at 108). "'The broad, general definition of fiduciary, involving confidence, trust and good faith, is not applicable in dischargeability proceedings under § 523(a)'; rather, the term's scope 'is a matter of federal law.'" Id. (quoting Zohlman v. Zoldan, 226 B.R. 767, 772 (S.D.N.Y. 1998)). "[I]t is well established that the fiduciary concept incorporated in § 523(a)(4) . . . is a narrow one, generally involving express trusts, technical trusts or statutorily imposed trusts; it does not extend to resultant trusts imposed by operation of law or equity." Yoshida, 435 B.R. at 108 (citing cases). However, the determination of whether a fiduciary relationship exists often turns on relationships governed by

12

state law. Village Mortgage Company v. Veneziano (In re Veneziano), 615 B.R. 666, 675 (Bankr. D. Conn. 2020).

It is well-established that corporate officers and directors act in fiduciary capacities. See In re Bernard, 87 F.2d 705, 706 (2nd Cir. 1937); Nofer, 514 B.R. at 354; Artis v. West (In re West), 339 B.R. 557, 567 (Bankr. E.D.N.Y. 2006). "In New York, a shareholder of a closely held corporation owes fiduciary duties to his fellow shareholders, in addition to those fiduciary obligations that arise out of his role as an officer or director of the corporation." Nofer, 514 at 354 (first citing Fox v. Koplik (In re Perry H. Koplik & Sons, Inc.), 476 B.R. 746, 797–800 (Bankr. S.D.N.Y. 2012), *adopted in relevant part by* 499 B.R. 276 (S.D.N.Y. 2013), *aff'd*, 13–3472–CV, 567 Fed.Appx. 43, 2014 WL 2109064 (2d Cir. May 21, 2014); and then citing Global Minerals & Metals Corp. v. Holme, 35 A.D.3d 93, 824 N.Y.S.2d 210, 212 (2006)).

The Plaintiff asserts that the State Court Judgment is a debt for defalcation in a fiduciary capacity. In the Plaintiff's amended petition in the State Court Action, which was filed after the State Court determined the parties' ownership interests in Lowbet, and after the Plaintiff discovered that the Property was sold, the Plaintiff sought damages for the Defendant's breach of fiduciary duty. The amended petition alleged, in pertinent part, as follows:

> At all relevant times, including at the time of the sale of the property, Ms. Liu, who is a twenty-five percent (25%) shareholder in Lowbet, owed a fiduciary duty to Mr. Hu as a shareholder in Lowbet. Ms. Liu breached her fiduciary duty to Mr. Hu by selling the property without authorization for the sale and by converting the proceeds of the sale.

(Hu Decl., Ex. 5 at ¶¶ 98, 99, ECF. No. 48-6.)

The State Court awarded judgment against the Defendant "on all claims asserted against her in [the State Court Action]," which includes the breach of fiduciary duty claim, and awarded a money judgment for $1,480,636.50. In granting the State Court Judgment, the State Court

actually and necessarily decided that the Defendant owed the Plaintiff a fiduciary duty as a shareholder in Lowbet and that the Defendant breached that duty by selling the property and taking the sales proceeds. That determination establishes that the Defendant was a fiduciary of the Plaintiff for purposes of § 523(a)(4).  See Viles v. Norton (In re Norton), Case No.17-70855-AST, Adv. Pro. No. 17-08125-AST, 2020 WL 717411, at *5 (Bankr. E.D.N.Y. Jan. 15, 2020) (relying upon allegations in the state court complaint where the elements of the state court action were "virtually identical" to the issues to be decided in the adversary proceeding); Deutsch, 575 B.R. at 602–03 (determining that the allegations in the state court complaint that were deemed admitted by the defaulting debtor, and which were necessary to the state law claims, satisfied the relevant provisions of § 523(a)).

Next, this Court must determine whether the debt is based upon fraud or defalcation that occurred while the Defendant acted in that fiduciary capacity.  In connection with that determination, this Court has explained:

> [T]the Court must look to the fiduciary's duties in the course of the relationship, which can be ascertained by looking to state law. See Rogers v. Guar. Trust Co. of N.Y., 288 U.S. 123, 130, 53 S. Ct. 295, 77 L. Ed. 652 (1933); In re Hayes, 183 F.3d 166 ("Although the precise scope of the defalcation exception is a question of federal law, its application frequently turns upon obligations attendant to relationships governed by state law."). For instance, New York law specifies that fiduciaries may not "use their position for their own personal advantage or for that of their confederates or to the detriment of stockholders." Schwartz v. Marien, 37 N.Y.2d 487, 373 N.Y.S.2d 122, 335 N.E.2d 334, 338 (1975).
>
> Defalcation requires "an intentional wrong," which includes both knowingly improper and reckless behavior as defined by the Model Penal Code. Bullock v. BankChampaign, N.A., [569 U.S. 267, 273-74], 133 S. Ct. 1754, 1759, 185 L.Ed.2d 922 (2013). A fiduciary behaves recklessly when he "'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." Id. at 1759 (quoting Model Penal Code § 2.02(2)(c) (1985)).

> Whether the debtor breached his fiduciary duty is a question of fact. See [Rothman v. Beeber (In re Beeber)], 239 B.R. [13,] 32 [Bankr. E.D.N.Y. 1999]; Schwartz, 373 N.Y.S.2d 122, 335 N.E.2d at 339. Courts rigorously scrutinize the dealings between a fiduciary and the corporation that he serves, with the fiduciary bearing the burden "not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein." Pepper [v. Litton], 308 U.S. [295,] 307, 60 S. Ct. 238; see also Schwartz, 373 N.Y.S.2d 122, 335 N.E.2d at 339 ("Determinations as to whether the activities of [fiduciaries] were undertaken in good faith for a legitimate corporate purpose . . . depend not only on an analysis of the objective facts but as well in part on an appraisal of [fiduciaries'] motives, involving as it will issues of credibility."). Suspicious circumstances include a fiduciary treating the affairs of the corporation as his own "corporate pocket . . . with disregard of the substance or form of corporate management." Pepper, 308 U.S. at 309, 60 S. Ct. 238.

Nofer, 514 B.R. 346, 354–55 (Bankr. E.D.N.Y. 2014)(omissions and last two alterations in original).  See also In re Hyman, 502 F.3d 61, 68 (2d Cir. 2007) ("[D]efalcation under § 523(a)(4) requires a showing of conscious misbehavior or extreme recklessness . . . .").

The Defendant asserts numerous arguments in opposition to the Plaintiff's motion for summary judgment under § 523(a)(4).  First, she argues that she sold the Property pursuant to a power of attorney issued by the Plaintiff in 1996 and, as such, she disputes that she violated the TRO when she sold the property, but rather asserts that the Plaintiff, through the Defendant as agent, violated the TRO.  (Def.'s Mem. of Law ¶ 17, ECF No. 52-2.)  Second, the Defendant argues that she was unaware of the TRO at the time she sold the Property.  (Def.'s Mem. of Law ¶¶ 17, 18, ECF No. 52-2.)  Third, the Defendant contends that she "acted in the best interest of the Lowbet to sell the building" because she lacked knowledge of the TRO and because the state court receiver was not collecting rents or paying the mortgage, real estate taxes, or water and sewer bills.  (Def.'s Suppl. Mem. of Law at 10, ECF No. 65.)  Indeed, the Defendant argues that,

15

had she not sold the property, it would have been lost in foreclosure.[8]  (Tr. 5/4/23 at 14, ECF No. 58.)  Lastly, the Defendant asserts that she was the breadwinner in the marriage and that the Plaintiff is a "parasite" and not entitled to any share of Lowbet.  (Def.'s Suppl. Mem. of Law at 11, ECF No. 65.)

All of these arguments must be rejected.  These arguments should have been raised as defenses in the State Court Action, of which the Defendant had notice and where she was represented by counsel.  The doctrines of collateral estoppel, res judicata, and/or Rooker-Feldman bar the Defendant from attacking, in this Court, the necessary determinations made by the State Court in the State Court Action and from raising defenses to the claims asserted therein.  See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283 (2005) (The Rooker-Feldman doctrine limits federal subject matter jurisdiction by prohibiting lower federal courts from acting as courts of appeal of state court judgments); Evans, 469 F.3d at 282 (collateral estoppel may apply to state court default judgments); Nasser v. JP Morgan Chase Bank, N.A. (In re Nasser), No. 17-40254-NHL, 2020 WL 5985427, at *4 (Bankr. E.D.N.Y. Oct. 8, 2020) ("Under Second Circuit law, the Rooker–Feldman doctrine is applicable to challenges to state court default judgments." (citing Shieh v. Flushing Branch, Chase Bank USA, N.A., No. 11–CV–5505 (CBA)(SMG), 2012 WL 2678932, at *5 (E.D.N.Y. July 6, 2012)); Buckskin Realty Inc. v. Windmont Homeowners Association, Inc. (In re Buckskin Realty Inc.), No. 1-13-40083-NHL, 2016 WL 5360750, at *6 (Bankr. E.D.N.Y. Sept. 23, 2016) (res judicata applies to default judgments and bars litigation of any claims and defenses that were or could have been asserted in the prior action).  As such, the Defendant cannot raise defenses to the claims asserted in the State Court Action and cannot challenge the State Court's determinations necessarily decided in the

---

[8] This argument ignores the fact that, after avoiding foreclosure of the Property by selling it without authorization, the Defendant failed to preserve the net sale proceeds to be distributed pursuant to the parties' respective interests in Lowbet.

Warrant of Arrest for Contempt and in the State Court Judgment in the context of this motion for summary judgment under § 523.

In this case, based upon the State Court's necessary determinations of the issues raised in the State Court Action, there is no genuine question of material fact that the State Court Judgment is a debt for the Defendant's defalcation in a fiduciary capacity. The State Court determined that the Defendant breached her fiduciary duty to the Plaintiff as shareholder of Lowbet by selling the Property without authorization and by taking the proceeds thereof. Importantly, prior to the issuance of the State Court Judgment, the State Court separately determined that the Defendant "is guilty of civil and criminal contempt for willfully failing to obey the [TRO] dated October 5, 2011 and that such conduct was calculated to and did actually defeat, impair, impede, [and] prejudice the rights of [the Plaintiff] pursuant to the [TRO] dated October 5, 2011." (Hu Decl. Ex. 9, ECF No. 48-10.) In holding the Defendant in criminal contempt, the State Court necessarily found that the Defendant willfully ignored the TRO. See In re White, 478 B.R. 177, 183 (Bankr. S.D.N.Y. 2012) ("Judiciary Law § 750 empowers the court to punish criminal contempt[], and requires proof beyond a reasonable doubt that the contemnor has willfully disobeyed a court order.") (citing Garry v. Garry, 121 Misc.2d 81, 467 N.Y.S.2d 175, 178 (N.Y. Sup. Ct. 1983)).

Giving collateral estoppel effect to the determinations actually and necessarily decided in the State Court's Warrant of Arrest for Contempt and the State Court Judgment, there can be no genuine dispute that the Defendant engaged in knowingly improper and reckless behavior by selling Lowbet's Property in violation of the State Court's TRO, and by keeping the net sale proceeds for herself to the detriment of Plaintiff. These actions clearly constitute defalcation in a fiduciary capacity under § 523(a)(4).

Given the conclusion that the State Court Judgment is excepted from discharge pursuant to § 523(a)(4) as a debt for defalcation while acting in a fiduciary capacity, it is unnecessary to address the grounds of fraud in a fiduciary capacity, larceny, or embezzlement under § 523(a)(4), or to address §523(a)(2) or (a)(6).

## CONCLUSION

For the foregoing reasons, the Plaintiff's motion for summary judgment is granted to the extent it seeks to except the State Court Judgment from discharge pursuant to 11 U.S.C. § 523(a)(4). A separate order and a judgment will issue.



Dated: February 12, 2024
Brooklyn, New York

Nancy Hershey Lord
United States Bankruptcy Judge